UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| DAVID T. MILLER, | ) ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) ) | Civil No.: 1:17-cv-10469-DJC |
| RAYMOND MARCHILLI, JR., | ) ) ) | |
| Respondent. | ) ) ) ) | |

## MEMORANDUM AND ORDER

**CASPER, J.**  January 9, 2019

## I. Introduction

Petitioner David Miller ("Miller"), acting *pro se*, has filed a petition seeking a writ of habeas corpus ("Petition") pursuant to 28 U.S.C. § 2254. D. 1. Respondent Raymond Marchilli Jr. ("Respondent"), the Superintendent of the Massachusetts Department of Correction, opposes the Petition. D. 34 at 3. For the reasons stated below, the Court DENIES Miller's motion to amend the Petition, D. 35, and also DENIES the Petition. D. 1.

## II. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the Court may grant a writ of habeas corpus if the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

A state court decision is "contrary to" clearly established federal law "if the state court either 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases,' or 'confronts a set of facts that are materially indistinguishable from'" a Supreme Court precedent and arrives at an opposite conclusion. Penry v. Johnson, 532 U.S. 782, 792 (2001) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). A state court decision is an "unreasonable application" of clearly established federal law "if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 572 U.S. 415, 426 (2014). Accordingly, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011).

The Court may likewise grant habeas relief if the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding." 28 U.S.C. § 2254(d)(2). Federal courts may not conclude that a state court factual finding is unreasonable "merely because [it] would have reached a different conclusion in the first instance." Wood v. Allen, 130 S. Ct. 841, 844 (2010). That reasonable minds could disagree about a state court's factual determination is insufficient to supersede the trial court's findings on federal habeas review. See Rice v. Collins, 546 U.S. 333, 341-42 (2006). Federal courts thus follow a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (quoting Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (per curiam)) (internal quotation marks omitted).

### III. Factual and Procedural Background

#### A. Relevant State Court Proceedings

The underlying charges against Miller arose out of a shooting at the Sunset Hill housing development in Fall River on September 25, 2006. Commonwealth v. Miller, 475 Mass. 212, 214 (2016). During the course of the police investigation, officers executed several search warrants and, as a result, seized evidence in the basement of unit 315 of the housing complex. D. 34 at 19. Miller did not live in this unit. Id. From this location, officers seized several items, including "a plastic bag containing two metal ammunition clips loaded with .223 caliber ammunition, and . . . loose .223 caliber ammunition rounds" in addition to a "rifle carrying case." Miller, 475 Mass. at 216-17.

Miller was indicted on three charges: murder in the first degree, carrying a firearm without a license and possessing a large capacity firearm. Id. at 217-18. Miller moved to suppress the evidence obtained from unit 315 because it was beyond the scope of the search warrant issued for his unit (unit 316). Id. The court allowed the motion as to the charge for possession of a large capacity firearm, but the Court denied it as to the charges of murder in the first degree and carrying a firearm without a license. Id. The Commonwealth later dismissed the possession of a large capacity firearm charge.

At relevant times during the state court proceedings, Miller was representing himself *pro se* with standby counsel. While in pretrial custody, Miller sent a letter, with attached grand jury minutes, to family members, requesting that they contact and convince his stepfather, "Butch," not to testify against him. Id. at 3. Unbeknownst to Miller, the letter was intercepted by a prison staff member, who copied the contents of the correspondence. Id.; D. 34 at 6. After learning of the confiscation, on November 26, 2008, Miller moved to suppress the outgoing letter from admission

3

at trial. D. 30-2 at 3. Miller refused his transport to court on the day of the scheduled motion hearing, thereby failing to appear at the suppression hearing and the court denied this second motion to suppress. Id. at 3-4.

On February 24, 2009, a jury returned a guilty verdict on the first-degree murder and firearm possession charges against Miller. Id. at 5; D. 34 at 6. The court sentenced Miller to life in prison. D. 34 at 6. During a conversation with Miller's stand-by counsel, Juror 16 from Miller's trial expressed concerns about the verdict. D. 30-2 at 5. After a hearing regarding stand-by counsel's conversation with Juror 16, the court had the juror express her concerns in writing. Id. Juror 16 revealed that, during deliberation, another juror brought a magazine into the jury room that contained pictures of BB guns to resolve a disagreement among the jurors as to whether a BB gun can resemble an actual gun. Id. In light of Juror 16's allegations, Miller moved for a new trial in March 2009, contending that the introduction of extraneous information "materially affected the result" of the trial. Id. at 2; D. 34 at 6. The court denied the motion on November 20, 2009. D. 30-2 at 8-9. Miller next consolidated his appeal of the denial of his motions to suppress, the motion for a new trial with that of the direct appeal of his conviction. Miller, 475 Mass. at 214. The Supreme Judicial Court affirmed these rulings and his conviction on August 17, 2016. Id.

### B. The Initial and Still Operative Petition

Miller has filed the Petition asserting that: (1) the denial of his motion to suppress the evidence seized from unit 315 violated his Fourth and Fourteenth Amendment rights; (2) the denial of his motion for a new trial in light of the introduction of extraneous evidence during jury deliberations violated his constitutional right to a fair trial; and (3) the statement that an immunized witness at trial was providing truthful testimony violated Miller's Fourteenth Amendment rights. D. 1 at 5-8. The Respondent has filed an answer to the Petition. D. 13. Miller moved for a stay

in abeyance on March 20, 2017 relating to an unexhausted, alleged Brady violation by the Commonwealth in failing to produce certain exculpatory evidence, D. 6 at 2, and on September 25, 2017, he moved to stay filing of his brief given the pendency of his motion for stay in abeyance, D. 23 at 1. On October 26, 2017, the Court denied both motions and ordered that the case proceed on the three claims asserted in the Petition. D. 26; D. 28. Miller filed a memorandum in support of the Petition, but also raised two additional grounds for relief that were not in the Petition. D. 30 at 23-38. The Respondent responded, opposing the original grounds in the Petition and also contending that the two additional grounds raised by Miller were waived and not reviewable. D. 34 at 12-14. Subsequently, on March 12, 2018, Miller moved to amend the Petition to include the two additional grounds for relief that were not in the Petition originally, but which he had introduced in his memorandum in support of same: 1) that his "rights were violated when the court waived his suppression hearing because [he] failed to appear," and 2) the "allowance of grand jury minutes during the trial proceedings was violative as to [his] confrontation rights." D. 35 at 2. The Respondent also opposes the amendment of the Petition on the grounds that such amendment is time barred.

## IV. Discussion

### A. Miller May Not Amend the Petition to Add Two Time-Barred Claims

As a preliminary matter, Miller's motion to amend is futile since the claims that he seeks to add to the Petition are time barred. Under the AEDPA, codified as 28 U.S.C. § 2244(d), a habeas corpus petition filed by a prisoner in state custody is subject to a one-year statute of limitations period that runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." § 2244(d)(1)(A); see Delaney v. Matesanz, 264 F.3d 7, 10 (1st Cir. 2001). Following an affirmance of conviction from the Supreme Judicial Court, a petitioner has ninety days to seek certiorari from the United States

Supreme Court. David v. Hall, 318 F.3d 343, 345 (1st Cir. 2003). Here, Miller's conviction was affirmed by the Supreme Judicial Court on August 17, 2016. Miller, 475 Mass. at 230, and his conviction became final ninety days later when the period to seek certiorari expired. Accordingly, Miller had until November 15, 2017 to file the Petition. See David, 318 F.3d at 345. While it is true that Miller filed the (initial) Petition on March 20, 2017, the new claims asserted in the proposed amended petition was filed on March 12, 2018 and, as a result, are untimely. See id. Section 2244(d)(2) provides that "the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." § 2244(d)(2). Miller does not assert, and the record here does not suggest, that there were any state post-conviction review or other collateral matters that delayed his assertion of these new claims here. Instead, Miller asserts only that although he "mistakenly failed to incorporate two additional claims" in the (initial) Petition, he raised them in state court. D. 35 at 2. Such explanation falls far short of any basis to toll the applicable one-year time bar here.

Moreover, there is no basis to conclude that these new two claims relate back to the grounds in the (timely filed) Petition such that they could be said to be timely filed. To relate back to the Petition, the new claims must arise out of the same conduct, transaction or occurrence. United States v. Ciampi, 419 F.3d 20, 24 (1st Cir. 2005) (citing Fed. R. Civ. 15). Moreover, in the context of a habeas petition, "the Rule 15 'relation back' provision is to be strictly construed, in light of 'Congress's decision to expedite collateral attacks by placing stringent time restrictions on [them].'" Id. (internal citation omitted); see, e.g., McGonagle v. United States, Civ. No. 02-73-M, 2002 WL 31409820, at *14 (D.N.H. October 23, 2002) (ruling that petitioners' motions to amend habeas petitions were untimely where "the claim petitioners seek to add by amendment is entirely

6

novel and unrelated to any claims advanced in their original petitions"). Neither of these two claims—one concerning the resolution of a separate motion to suppress a letter that Miller sent while in pretrial detention and the other concerning the admission of grand jury minutes attached to this letter—arise out of the same conduct, transaction or occurrence as the claims originally raised in the Petition. These new claims concern evidence seized after Miller was charged, as a result of a communication he sent from jail and do not arise out of the same circumstances as the allegedly improperly seized evidence from unit 315, the extraneous material before the jury or any statement to the jury about the testimony from an immunized witness. Accordingly, it cannot be reasonably be concluded that these new claims relate back to those originally asserted in the Petition.

Lastly, there is no basis for equitable tolling of the one-year limitations period under AEDPA here. To rely on equitable tolling, Miller would have to have shown "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." McQuiggin v. Perkins, 569 U.S. 383, 391 (2013) (quoting Holland v. Florida, 560 U.S. 631, 645 (2010)). This showing has not been made here, particularly where the record does not reveal any impediment to Miller having raised these issues in the Petition, particularly as he raised a Fourth Amendment claim regarding the denial of his suppression motion regarding the seizure of the letter (to which the grand jury transcript was attached) in his direct appeal, a judgment that became final back in November 2016, as discussed above. Miller, 475 Mass. at 219-20.

For all of the aforementioned reasons, the Court denies Miller's motion to amend the Petition to add two more claims regarding the manner of resolution of the motion to suppress his confiscated mail and the introduction of the grand jury material at trial, D. 30 at 26, 32, and does

not reach these claims to the extent that Miller also raised them in his memorandum in support of the Petition.

**B. <u>Ground One: Miller Had a Full and Fair Opportunity to Litigate His Fourth Amendment Claim in State Court</u>**

Turning to the merits of the three grounds in the original Petition, Miller first asserts that he is entitled to habeas relief due to the partial denial of his motion to suppress evidence seized from the basement of a neighbor's apartment in purported violation of his Fourth Amendment rights. D. 30 at 39. The Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone v. Powell, 428 U.S. 465, 494 (1976). There is, however, "an exception for instances in which a habeas petitioner had no realistic opportunity to litigate his Fourth Amendment claim fully and fairly in the state system." Sanna v. Dipaolo, 265 F.3d 1, 8 (1st Cir. 2001); Palmigiano v. Houle, 618 F.2d 877, 881–82 (1st Cir. 1980). The petitioner carries the burden of demonstrating that his claim falls within this exception. Sanna, 265 F.3d at 8.

In this case, Miller had a full and fair opportunity to litigate this Fourth Amendment claim in state court. See S.A. 342-63. There, on April 18, 2008, Miller moved to suppress evidence seized from basement of unit 315, namely a plastic bag containing two metal ammunition clips loaded with .223 caliber ammunition, loose .223 caliber ammunition rounds and a rifle carrying case. S.A. 118. Miller moved to suppress this evidence contending that the seizure was made in violation of both the Fourth Amendment and Art. 14 of the Massachusetts Declaration of Rights. Miller, 475 Mass. at 217. The trial court allowed Miller's motion in part, agreeing that suppression was warranted as to the charge of possession of a large capacity firearm, S.A. 100. The motion, however, was denied as to the charges of murder in the first degree and possession of a firearm

since the court rejected his argument that he had standing to challenge the introduction of this evidence as to these two charges where, unlike as to the large capacity firearm charge, possession of the items seized was not an essential element to those charges, S.A. 100; Miller, 475 Mass. at 217-18. Miller subsequently raised the partial denial of his motion to the Supreme Judicial Court on direct appeal. S.A. 66-79; Miller, 475 Mass. at 216-18. On appeal, that court, citing United States v. Salvucci, 448 U.S. 83, 95 (1980), held that the Superior Court "correctly determined that [Miller's] standing to challenge the search of his neighbor's basement under the third indictment [for the possession of a large capacity firearm] did not give [] [Miller] standing to challenge the admission of the seized items at the trial of the other indictments." Miller, 475 Mass. at 218. Accordingly, Miller had a fair and full opportunity to litigate this Fourth Amendment claim and the Court also does not conclude that the state court's decision was contrary to or an unreasonable application of clearly established federal law. Accordingly, Miller is not entitled to habeas relief on Ground One.

### C. **Ground Two: The Denial of Motion for a New Trial Did Not Rise to the Level of Due Process Violation**

As to Ground Two, Miller argues that he was denied a fair trial because he was prejudiced when one of the jurors brought a magazine containing photographs of BB guns into deliberation for the purpose of demonstrating that BB guns are similar in appearance to firearms. D. 30 at 15. Although Miller makes passing reference to federal law, D. 30 at 14-15 (citing Remmer v. United States, 347 U.S. 227, 229 (1954)), D. 30 at 22-23, Miller does not appear to claim that the Supreme Judicial Court's ruling about this matter was contrary to or an unreasonably application of clearly established law. Instead, he appears to contend that he is entitled to habeas relief on this ground since the Supreme Judicial Court's adjudication "resulted in a decision that was based on an

9

unreasonable determination of the facts in light of the evidence presented in the state proceeding." 28 U.S.C. 22554(d)(2).

Here, the Court does not agree with this contention. To determine whether the extraneous material presented to a deliberating jury was prejudicial and, thus, warranted a new trial, the Supreme Judicial Court applied a two-step inquiry requiring: 1) the defendant to prove by a preponderance of the evidence that extraneous material was presented to the jury; and 2) the Commonwealth to prove beyond a reasonable doubt that the jury's exposure to the extraneous material was not prejudicial to the defendant. Commonwealth v. Bresnahan, 462 Mass. 773-74 (2012) (explaining two-step inquiry established in Commonwealth v. Fidler, 377 Mass. 192 (1979)).

Here, the trial court considered the information from Juror 16. The trial court then presumed the extraneous material was presented to the jury and turned to the next prong of the analysis, *i.e.*, whether the juror's conduct during jury deliberations was prejudicial to Miller. D. 30-2 at 5. When considering the second prong, "the judge may not receive any evidence concerning the actual effect of the matter on the juror's decision. . .[r]ather, the judge must focus on the probable effect of the extraneous facts on a hypothetical average jury." Fidler, 377 Mass. at 201. The trial court acknowledged that "exposure of this magazine to the jury was extraneous matter," but was "satisfied that there was no probability of prejudice . . . beyond a reasonable doubt . . ." and denied the motion. D. 30-2 at 8-9. The trial court held that "the case against [Miller] was strong while the question of whether a BB gun can resemble a real gun was not attached to any crucial issue in this case." D. 30-2 at 8. The Supreme Judicial Court affirmed the trial court's decision and explained that the trial court "properly focused on the weight of evidence against

[Miller], and the likelihood that the extraneous material prejudiced him." Miller, 475 Mass. at 222.

This Court does not conclude that these decisions were based on an unreasonable determination of the facts in light of evidence before the state court. It is well settled that "[f]actual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2)." Miller-El v. Cockrell, 537 U.S. 322, 324 (2003). Miller has not overcome this presumption by clear and convincing evidence. Instead, he argues that his girlfriend's testimony that she observed Miller with a Ruger Mini-14 was extremely damaging and that the juror's demonstration of the similarity to a BB gun "tipped the scale in favor of guilt" despite another witness's allegedly contrary testimony that the first witness merely observed a BB gun. D. 30 at 18, 22. This argument, however, is insufficient to warrant the relief Miller seeks where such evidence was just part of the inculpatory evidence before the jury about Miller's guilt. Miller, 475 Mass. at 222-23. For instance, the Supreme Judicial Court considered the entirety of his girlfriend's testimony, which included "numerous inculpatory statements made and actions taken by [Miller] immediately following the murder" and also her testimony that "[Miller] wiped blood off his face after they fled to Boston." Id. Additionally, it considered that "[m]ultiple witnesses also observed a person matching [Miller's] description [] fleeing the scene of the crime." Id. In light of the substantial evidence against Miller, this Court cannot conclude that the finding that Miller was not prejudiced by the jury's exposure to the BB gun magazine was an objectively unreasonable determination of the facts. Accordingly, the Court denies habeas relief as to Ground Two.

### D. Ground Three in the Petition is Waived

As to Ground Three, Miller asserts that the Commonwealth violated his Fourteenth Amendment rights by stating that a witness was providing truthful testimony as part of his immunity agreement. D. 1 at 8. While this ground is raised in the Petition, it is notably absent from Miller's memorandum filed in support of the Petition. See D. 30. Respondent contends that Miller's argument is effectively waived by his failure to support this argument in his supporting memorandum. D. 34 at 14. The Court agrees. As articulated in the Petition, this ground relates to the testimony of a government witness, Steven Smith, who "testified under a grant of immunity and the commonwealth stated he was providing 'truthful' testimony as his obligation under the inmunitized [sic] witness agreement" which violated the [Miller's] rights under the Fourteenth Amendment. D. 1 at 8. Despite its inclusion in the Petition, Miller does not further explain or support this claim in the Memorandum. See D. 30. Nor does the record otherwise lend to support to this claim.

Miller has waived this claim. See Perkins v. Russo, No. 02-10460-MLW, 2007 WL 2507741, at *3 (D. Mass. Aug. 31, 2007); see also Blake v. Medeiros, No. 14-CV-11845-IT, 2017 WL 4076104, at *4 (D. Mass. Sept. 14, 2017) (concluding two claims waived where, among other things, "[s]ince filing his petition . . . [the petitioner] does not address either claim in his memorandum"); Smiley v. Maloney, No. 01-11648-GAO, 2003 WL 23327540, at *15 (D. Mass. Oct. 31, 2003) (finding claim waived where "petitioner has not, in his Memorandum of Law in support of the petition, advanced any argument, much less reasoned argument, on this point"), aff'd, 422 F.3d 17 (1st Cir. 2005). The First Circuit has consistently held that "issues adverted to in a perfunctory fashion, unaccompanied by some effort at developed argumentation, are deemed waived." Watson v. Trans Union LLC, 223 F. App'x 5, 6 (1st Cir. 2007) (quoting United States

v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990)) (internal quotation marks omitted). Although *pro se* defendants are accorded more leeway, see, e.g. Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997), they are ultimately still subject to this standard, see e.g. United States v. Nishnianidze, 342 F.3d 6, 18 (1st Cir. 2003); Strahan v. Coxe, 127 F.3d 155, 172 (1st Cir. 1997). Here, Miller has advanced a claim in its barest form and, as such, does not entitle Miller to the habeas relief he seeks.

V.      **Conclusion and Certificate of Appealability**

For the foregoing reasons, the Court DENIES the motion to amend the Petition, D. 35, and the Petition, D.1. Miller may receive a certificate of appealability only if he makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A certificate of appealability is appropriate when "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2003)) (internal quotation marks omitted). Based upon the analysis of the record and the applicable law in this Memorandum and Order, the Court is not, at this juncture, inclined to issue a certificate of appealability, but will give Miller until **February 6, 2019** to file a memorandum, not to exceed five (5) pages, if he seeks to address the issue of whether a certificate of appealability is warranted as to the Petition.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge